UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATALINA ASTORGA MONTOYA,<br><br>      Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI[1]<br>Acting Commissioner of Social Security,<br><br>      Defendant. | Case No.: 1:20-cv-0152 JLT<br><br>ORDER GRANTING PLAINTIFF'S REQUEST FOR JUDICIAL REVIEW (DOC. 16) AND REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF CATALINA ASTORGA MONTOYA, AND AGAINST DEFENDANT, KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY |

Catalina Montoya asserts she is entitled to supplemental security income under Title XVI of the Social Security Act. Plaintiff argues the administrative law judge failed to fully develop the medical record and the administrative decision denying benefits lacks the support of substantial evidence. (*See generally* Doc. 16.) For the reasons set forth below, the matter is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**BACKGROUND**

In June 2015, Plaintiff filed an application for benefits, alleging she became disabled in November 2010 due to mental issues, diabetes, asthma, arthritis, and breast cancer. (Doc. 11-1 at 101-

---

[1] The action was originally filed against Andrew M. Saul in his capacity as the Commissioner of Social Security. (*See* Doc. 1 at 1.) The Court has substituted Kilolo Kijakazi, who has since been appointed the Acing Commissioner of Social Security, as the defendant. *See* Fed. R. Civ. P. 25(d).

102.) The Social Security Administration denied the application at the initial level and upon reconsideration. (*See id.* at 101-135.) Plaintiff requested an administrative hearing on the application and testified before an ALJ on March 26, 2018. (*See* Doc. 11-1 at 31, 43-44.) The ALJ found Plaintiff was not disabled and issued an order denying benefits on July 13, 2018. (*Id.* at 10, 30-41.) Plaintiff requested review of the decision by the Appeals Council, which received additional medical evidence and denied the request on October 15, 2019. (*Id.* at 10-13.) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

## **STANDARD OF REVIEW**

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## **DISABILITY BENEFITS**

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The process requires the ALJ to determine whether Plaintiff (1) is engaged substantial gainful activity, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

Pursuant to this five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity after the application date of June 15, 2015. (Doc. 11-1 at 33.) Second, the ALJ found "[t]he claimant has the following severe impairments: post traumatic stress disorder; depression; and breast cancer status post radiation, lumpectomy, and right partial mastectomy." (*Id.*) In addition, the ALJ found Plaintiff had several "non-severe medically determinable impairments," including: "asthma; obesity; methadone maintenance treatment; diabetes mellitus with a history of hyperkalemia; high blood pressure with no limits or symptoms; mild coronary atherosclerosis without stenosis; osteoarthritis of the bilateral hands; and right 5th finger fracture." (*Id.*) The ALJ explained: "Such conditions do not pose more than minimal limitations in the ability to perform work related activity as they have either been responsive to treatment, and/or have not lasted or are not expected to last at a 'severe' level for a continuous period of 12 months or expected to result in death." (*Id.*)

At step three, the ALJ determined Plaintiff's impairments did not meet or medically equal a Listing. (Doc. 11-1 at 34.) Next, the ALJ found:

> [T]he claimant has the residual functional capacity to perform work as follows: lift 50 pounds occasionally and lift and carry 25 pounds frequently; stand and or walk 6 hours out of 8 hours; and sit 6 hours out of 8 hours. She can frequently climb ramps, stairs, ladders, ropes, scaffolds, balance, stoop, kneel, crouch, and crawl. She can do

> work that does not involve concentrated exposure to fumes, odors, dust, gas, and poor ventilation. She can do work consisting of simple tasks with occasional brief and superficial peer interaction, and no public contact. She can adapt to routine changes in workplace. She can understand, remember, and carry out 1-2 and 3-4 step instructions. She can maintain attention and concentration for 2 hour increments.

(*Id.* at 36.) At step four, the ALJ noted Plaintiff did not have past relevant work. (*Id.* at 40.) With this residual functional capacity, the ALJ determined at step five that Plaintiff could perform "jobs that exist in significant numbers in the national economy." (*Id.*) Thus, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act since the application date. (*Id.* at 41.)

## **DISCUSSION AND ANALYSIS**

Plaintiff argues the ALJ failed to develop the record related to her arthritis, including obtaining an assessment of her physical limitations. (Doc. 16 at 6-10.) Further, Plaintiff contends the ALJ committed a procedural error and violated her "right to due process by failing to provide a list of exhibits detailing the evidence relied upon in reaching a decision." (*Id.* at 11, emphasis omitted.)

**A.    Waiver**

As an initial matter, the Court notes Plaintiff asserted on the first page of the brief that the issues presented included failure of the ALJ "to develop the record and obtain an assessment of Plaintiff's physical and mental limitations from a treating or examining source." (Doc. 16 at 1.) However, in the "Arguments" portion of the brief, Plaintiff specified that the ALJ failed to develop the record related to Plaintiff's arthritis only, "and failed to obtain an[] updated assessment of Plaintiff's physical limitations from a treating or examining source." (*Id.* at 6, emphasis omitted.) Plaintiff does not present any arguments related to the development of the record for her mental impairments and does not challenge the ALJ's findings related to her mental limitations. (*See id.* at 6-11.)

The Ninth Circuit indicated courts cannot "manufacture arguments for an appellant." *Indep. Towers of Wash. v. Washington,* 350 F.3d 925, 929 (9th Cir. 2003) (quoting *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994)). Rather, the Court will "review only issues with are argued specifically and distinctly." *Id.* Therefore, when a claim of error is not argued and explained, the argument is waived. *See id.* at 929-30 (holding a party's argument was waived because the party made only a "bold assertion" of error, with "little if any analysis to assist the court in evaluating its legal challenge"); *see also Hibbs v. Dep't of Human Res.*, 273 F.3d 844, 873 n.34 (9th

Cir. 2001) (finding the assertion of error was "too undeveloped to be capable of assessment"). Because Plaintiff failed to discuss the record related to her mental impairments or otherwise dispute the mental limitations identified in the residual functional capacity, Plaintiff waived any challenge to these findings of the ALJ.

**B.     Evidence and Findings Related to Plaintiff's Arthritis**

In her application for benefits, Plaintiff indicated her disabling impairments included arthritis. (Doc. 11-1 at 101-102.)  Plaintiff testified at the hearing that arthritis affected her right knee, both feet, and both hands.  (*Id.* at 58-59.)  She reported she had difficulty holding items and everything would "fall[] out of [her] hands."  (*Id.* at 59.)  Plaintiff also indicated she had difficulty walking and was prescribed a cane only a couple of weeks prior to the hearing.  (*Id.* at 59-60.)

The ALJ informed Plaintiff at the hearing that she "got records from Dan Watros (sic)," which were admitted into the record.  (Doc. 11-1 at 49-50.)  Plaintiff reported she had difficulty with the CD of evidence provided and had not reviewed all the exhibits.  (*Id.* at 48.)  The ALJ asked Plaintiff to review the documents and provide "any comments about any of the exhibits … in writing" postmarked by the end of the week, which was March 30, 2018.  (*Id.* at 48-49.)  The ALJ indicated any comments made by Plaintiff would be considered when making the decision.  (*Id.*)

On March 28, 2018, Plaintiff submitted a response to the exhibited evidence with the assistance of her son.  (Doc. 11-1 at 346-352.)  Plaintiff reported she saw Dr. Daniel Watrous for treatment of her arthritis and indicated she submitted medical forms that she had in her possession. (*Id.* at 350, 352.)  Thereafter, on an unknown date, Plaintiff received a letter from the ALJ and submitted a "Response to Proffer Evidence." (*See id.* at 4, 363-365.)  Plaintiff identified each of the doctors she was seeing for treating—including Dr. Daniel Watrous for "Rheumatology & Internal Medicine"— and indicated she was "submitting some documents from a doctor that [she] did not see in the documents." (*Id.* at 363-364.)

Plaintiff now argues the ALJ failed to develop the record related to her arthritis, including evidence from Dr. Watrous.  (Doc. 16 at 6-8.)  She contends "the record is incomplete with respect to Plaintiff's hand impairments and treatment for osteoarthritis, as it lacks any treatment records from Dr. Watrous between June 2016 and January 2018."  (*Id.* at 7.)  According to Plaintiff, "because the ALJ

5

failed to consider the treatment records pertaining to this condition, the ALJ's conclusion that the impairment is not severe is unsupported by substantial evidence." (*Id.*)

### 1.   Duty to develop the record

A claimant bears the burden to provide medical evidence that supports the existence of a medically determinable impairment. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *see also Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998) ("At all times, the burden is on the claimant to establish [his] entitlement to disability insurance benefits"). As the Supreme Court explained, it is "not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so." *Bowen*, 482 U.S. at 146 n.5.

On the other hand, the law is well-established in the Ninth Circuit that the ALJ has a duty "to fully and fairly develop the record and to assure the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). The Ninth Circuit explained:

> The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered. This duty extends to the represented as well as to the unrepresented claimant. When the claimant is unrepresented, however, the ALJ must be especially diligent in exploring for all the relevant facts ... The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect her own interests.

*Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations and quotation marks omitted).

Importantly, the law imposes a duty on the ALJ to develop the record in limited circumstances. 20 C.F.R § 416.912(d)-(f) (recognizing a duty on the agency to develop medical history, contact medical sources, and arrange a consultative examination if the evidence received is inadequate for a disability determination). For example, the duty to develop the record is triggered "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2201). The duty may be discharged in a number of ways, including subpoenaing claimant's doctors, submitting questions to physicians, continuing the hearing, or keeping the record open after the hearing to allow additional evidence. *Tonapetyan*, 242 F.3d at 1150 (citing *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998) and *Smolen*, 80 F.3d at 1288).

Because Plaintiff was unrepresented at the hearing level and suffered from severe mental impairments—as acknowledged by the ALJ—there was a heighted duty to develop the record for the

ALJ in this action. *See Tonapetyan*, 242 F.3d at 1150. The ALJ found at the hearing that the record was inadequate given Plaintiff's representations that she was seeing a cardiologist and there were no records from this physician. (*See* Doc. 11-1 at 50-52.) The ALJ also confirmed Plaintiff signed "an authorization for medical records" for the administration to be able to obtain the documents. (*Id.* at 52.) Following the hearing, the administration also communicated with Plaintiff regarding the submission of records, as Plaintiff indicated she was responding received a letter from the ALJ and the administration filed the documents as Plaintiff's "Response to Proffer Evidence" dated May 16, 2018. (*Id.* at 4, 363-366.) Thus, it is clear the ALJ acknowledged she had a duty to further develop the record.

Furthermore, the medical record appears objectively inadequate for the ALJ to perform a proper evaluation of the severity of Plaintiff's arthritis and resulting limitations and abilities. Plaintiff informed the ALJ—both at the hearing and in her written response to the exhibits— that she was receiving treatment from Dr. Watrous for arthritis and reported difficulty getting "knew (sic) medical records and paperwork" from physicians to submit to the administration. (Doc. 11-1 at 347.) Plaintiff provided contact information for Dr. Watrous, noting she did not see documents from the doctor in the record, and submitted treatment note that referred to three prior visits with the physician. (*See id.* at 364, 1454.) The document from Dr. Watrous corroborates Plaintiff's report that records from her treating rheumatologist were not included in the exhibits, and the ALJ had a duty to obtain such evidence. *See Carlon v. Saul*, 2019 WL 4274091, at *12 (E.D. Cal. Sept. 9, 2019) (finding "the record was objectively inadequate" and the ALJ had a duty to develop the record where treatment notes referenced appointments during the relevant time period and the exhibits did not "contain notes from those appointments"); *see also Bernice H. v. Berryhill*, 2018 WL 3862303, at *4 (D. Or. Aug. 14, 2018) ("the ALJ's duty is triggered where it is clear medical records are missing or additional medical records are referenced but not included in the administrative record"). Consequently, the Court finds the ALJ's duty to develop the record was triggered.

The Commissioner argues "[t]he ALJ fully satisfied any duty that she had to develop the record" though "allowing Plaintiff the opportunity to submit further records after the hearing and by securing and admitting a further 600 pages of medical records." (Doc. 18 at 7.) However, the duty to develop the record may not be satisfied where the record remains inadequate for evaluation of a

claimant's impairment. For example, in *Carlon*, this Court determined that the ALJ did not discharge the duty even after obtaining additional records after the hearing. *Id.*, 2019 WL 4274091 at *8, 12. The Court observed that the ALJ obtained "treatment notes and certain MRI results" after the hearing. *Id.* at *12. Despite keeping the record open, "the ALJ did not obtain any of the other missing records, including the records from Plaintiff's treating physician during the relevant period prior to the date last insured, and did not obtain any medical opinions from Plaintiff's treating or evaluating physicians." *Id.* Thus, the Court concluded, "the ALJ failed to fully and fairly develop the record." *Id.* at *8.

Similarly, here the ALJ obtained additional records, but did not obtain the missing records that Plaintiff identified from Dr. Watrous related to her arthritis treatment. There is nothing in the record to suggest the ALJ attempted to obtain such records and was unable to do so because the documents did not exist.[2] Because the ALJ did not obtain the missing treatment records from Dr. Watrous or seek medical opinions related to Plaintiff's arthritis, the ALJ failed to fulfill her heightened duty to develop the record in this action. *See Carlon*, 2019 WL 4274091 at *8, 12; *Miksch v. Massanari*, 18 Fed. App'x 632, 635 (9th Cir. 2001) (finding error where the ALJ did not "attempt[] to secure the records herself" and adjudicated the claim "on a deficient record").

### 2. Plaintiff's residual functional capacity

A claimant's residual functional capacity is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). In formulating an RFC, the ALJ weighs medical and other source opinions. *See, e.g., Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009). Further, the ALJ must consider "all of [a claimant's] medically determinable impairments," whether severe or not, when defining a claimant's RFC. 20 C.F.R. §§ 405.1545(a)(2), 416.945(a)(2).

---

[2] To the contrary, the record indicates that once Plaintiff obtained legal representation, she produced arthritis treatment records dated beginning March 13, 2017—during the relevant period—and a physician's opinion statement from Dr. Watrous to the Appeals Council. (*See* Doc. 11-1 at 11; *see also* Doc. 17-2 at 3-50.) Because the claimant was later able to show "records do, in fact, exist," it supports a conclusion that the ALJ did not take sufficient action to develop the record. *See Miksch v. Massanari*, 18 Fed. App'x 632, 635 (9th Cir. 2001) (noting the *pro se* claimant established missing medical evidence existed by presenting it to the district court and remanding the matter for an ALJ to adjudicate the full record).

8

Plaintiff contends the RFC identified by the ALJ "is legally deficient because no medical professional assessed the impact of Plaintiff's diagnoses and symptoms in light of the longitudinal evidence of record." (Doc. 16 at 9.) As discussed above, the ALJ erred in by not developing the record related to Plaintiff's arthritis, which impacts the review of the remaining evidence—such as Plaintiff's subjective complaints—and formulation of the RFC. *See Robbins v. Social Sec. Admin.,* 466 F.3d 880, 883 (9th Cir. 2006) ("In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and the effects of symptoms, including pain…"); *see also Annette S. v. Saul*, 2019 WL 13039945, at *6 (C.D. Cal. Aug. 20, 2019) (explaining an ALJ must consider missing medical records "for a full and fair review," and an "RFC assessment based on the incomplete record is not supported by 'substantial evidence'"). Therefore, the Court is unable to find the RFC determination was proper.

## C.     Compliance with HALLEX

The Commissioner's *Hearings, Appeals, and Litigation Manual*, commonly referred to as "HALLEX" is "an internal Social Security Administration policy manual." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1072 (9th Cir. 2010). Plaintiff asserts the ALJ violated HALLEX "by failing to provide a list of exhibits detailing the evidence relied upon in reaching a decision." (Doc. 16 at 11, emphasis omitted.) Plaintiff observes that under HALLEX § 1-2-1-20,

> An exhibit list in final form is required when an ALJ issues a less than fully favorable decision to protect the claimant's due process rights. The claimant is entitled to know the information the ALJ relied on when making the decision. When an ALJ issues a less than fully favorable decision, preparing the exhibit list in final form is mandatory and is not a discretionary practice.

(*Id.* at 11, quoting HALLEX 1-2-1-20, *available at* https://www.ssa.gov/OP_Home/hallex/I-02/I-2-1-20.html (last visited November 16, 2021).) Plaintiff contends that without the exhibit list, she "had no way of knowing that the ALJ failed to obtain all relevant treatment records." (*Id.* at 12.) Thus, Plaintiff argues the lack of an exhibit list resulted in a violation of her right to due process. (*Id.* at 11-12.)

Plaintiff contends under Social Security Ruling (SSR) 13-2p, "[t]he Agency itself has mandated that an ALJ is obligated to follow SSA policies as set forth in the HALLEX." (Doc. 16 at 8, citing SSR 13-2p, 2013 WL 621536, at *7.) Plaintiff observes that SSR 13-2p provides: "[w]e require adjudicators at all levels of administrative review to follow agency policy, as set out in the Commissioner's

regulations, SSRs, Social Security Acquiescence Rulings (ARs), and other instructions, such as the Program Operations Manual System (POMS), Emergency Messages, and the Hearings, Appeals and Litigation Law manual (HALLEX)." (*Id.*, quoting SSR 13-2p, 2013 WL 621536 at *15 [emphasis omitted].)

The Commissioner argues the ALJ did not commit reversible error by failing to create an exhibit list, because the Ninth Circuit has held that "HALLEX does not impose "judicially enforceable duties on either the ALJ or this court." (Doc. 18 at 7, quoting *Lockwood*, 616 F.3d at 1072.) Further, the Commissioner observes that "this Court has rejected the same argument Plaintiff makes here with respect to the same provision of HALLEX. (*Id.*, citing *Teeters v. Astrue*, 2011 WL 1135184 at *5-6 (E.D. Cal. Mar. 28, 2011).)

Notably, SSR 13-2p, explicitly states that it relates to "evaluating cases involving drug addiction and alcoholism (DAA)." SSR 13-2p, 2013 WL 621536, at *1. In addition, the Agency indicated that SSR 13-2p, "consolidate[d] information from a variety of sources to explain our DAA policy." *Id.*, 2013 WL 621536 at *2. Plaintiff does not identify any evidence in the record supporting a conclusion that these provisions are applicable for her claim. Regardless, "even after the promulgation of SSR 13-2p, on February 20, 2013, the Ninth Circuit has continued to cite Roberts and Lockwood for the proposition that the Agency's internal policy manuals such as HALLEX do not give rise to any legally enforceable rights." *Kathleen S. v. Saul*, 2020 WL 353602, at *7 (S.D. Cal. Jan. 21, 2020).

The Ninth Circuit has maintained its determination that HALLEX "does not carry the force of law." *See, e.g., Wilson v. Berryhill*, 732 Fed. App'x 504, 507 (9th Cir. 2018) (declining to review an assertion of error for failure to comply with HALLEX); *see also McGowan v. Saul*, 833 Fed. App'x 138 (9th Cir. Jan. 6, 2021) (finding the ALJ "did not commit reversible error" by failing to comply with HALLEX "because the ALJ's noncompliance with HALLEX is not legally enforceable"); *Barreras v. Saul*, 803 Fed. App'x 70 (9th Cir. 2020) (finding it was "inconsequential" that the ALJ acted contrary to policies in HALLEX because the manual does not "impose[] judicially enforceable duties on either the ALJ or this court") (citation omitted). Because HALLEX is not legally enforceable, Plaintiff is unable to show reversible error for any failure by the ALJ to comply with the standards related to creation of an exhibit list. *See Roberts*, 644 F.3d at 933 (declining to "review allegations of noncompliance" with

HALLEX); *Moore*, 216 F.3d at 868 (same).

**D.     Remand is Appropriate**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v*, 80 F.3d at 1292. In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

Further proceedings are necessary when an ALJ fails to fully develop the medical record related to a claimant's impairment. *See Miksch,* 18 Fed. App'x at 635 (9th Cir. 2001) (remanding for further administrative proceedings where ALJ failed to attempt to obtain medical records and adjudicated the application on a deficient record); *see also Carlon*, 2019 WL 4274091, at *14 (remanding the matter for development of the medical record); *Annette S.*, 2019 WL 13039945, at *6 (explaining an ALJ must consider missing medical records "for a full and fair review," and remanding the action). Given the ALJ's failure to obtain records related to Plaintiff's arthritis or any medical opinion related to the impairment, the Court finds a remand for further proceedings is necessary for the matter to be adjudicated on a full record.

## CONCLUSION AND ORDER

For the reasons set for above, the Court finds the ALJ had a heightened duty to develop the record in this action and failed to carry this burden. Thus, the ALJ's decision cannot be upheld. *See Sanchez*, 812 F.2d at 510. Accordingly, the Court **ORDERS**:

1.     Plaintiff's request for review of the ALJ's decision (Doc. 16) is **GRANTED**;

2. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and

3. The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff Catalina Astorga Montoya and against Defendant Kilolo Kijakazi, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **November 17, 2021**                    _ **/s/ Jennifer L. Thurston**
                                                  CHIEF UNITED STATES MAGISTRATE JUDGE